**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-CR-146 (RDM)** |
| | : | |
| **MATTHEW MONTALVO,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to Defendant Matthew Montalvo's Motion to Modify Conditions of Release, ECF No. 20.   The defendant seeks to modify his conditions of release so that his wife can keep her firearm in their shared residence.   The government opposes this modification.

## BACKGROUND

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election.   These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.   Montalvo participated in this attack.

At 2:25 PM, the Rotunda Door on the east side of the U.S. Capitol was breached by rioters. As scene in Figure 1 below, at 2:27 PM, a U.S. Capitol Police Officer was blocking the door when he was pulled to the ground by a rioter.   Less than twenty seconds after the officer was pulled to the floor, Montalvo (seen in Figure 2) was among the first wave of rioters to push their way through the door and into the building.

2



*Figure 1*  *Figure 2*

After entering through the Rotunda Door, Montalvo moved throughout the building and joined a crowd that had gathered in front of a police line that had formed near the entrance to the Chamber of the House of Representatives.   On CCTV footage, Montalvo can be observed using a water bottle to flush tear gas out of his eyes.   After pushing through the police line, the crowd discovered that the entrance to the House Chamber had been barricaded shut from the inside as Members were being evacuated.   Montalvo then followed the crowd towards the entrance of the Speaker's Lobby, which leads to the House Chamber.   Montalvo was among the crowd gathered nearby in the hallway when Ashli Babbitt was shot as she attempted to enter the Speaker's Lobby.   Soon after, a group of Metropolitan Police (MPD) Officers arrived and pushed the crowd, including Montalvo, out of the Capitol Building through the Upper House Door.

In total, Montalvo remained inside the Capitol Building for almost 25 minutes, contributing to the crowd that overwhelmed law enforcement and led to the delay of the certification of the electoral vote count.

Due to his participation in the riot, the defendant was charged by criminal complaint on April 15, 2022, and arrested on April 26, 2022.   ECF Nos. 1, 5.   The government executed a search warrant at the time of arrest, and, among other items, seized the defendant's phone and

clothes that Montalvo wore on January 6.   The government has not yet reviewed the contents of the defendant's phone.

On April 26, 2022, the defendant had an initial appearance in the Middle District of Florida, and he was released on conditions, including the condition that defendant refrain from having any firearm in the residence.   On April 28, 2022, the government filed a criminal information, charging Montalvo with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. §1752(a)(2); disorderly conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).

The defendant's initial appearance in Washington, D.C. was held on May 5, 2022, before Magistrate Judge Meriweather.   Prior to the initial appearance, the Pretrial Services Agency (PSA) prepared a pretrial services report, which included a recommendation that Montalvo not be allowed to possess firearms.   ECF No. 12, p. 1.   At the initial appearance, the government requested that the defendant not be permitted to possess firearms while on pretrial release, and Montalvo did not oppose.   Magistrate Judge Meriweather adopted PSA's recommendation and included the firearm restriction among the conditions of release.   ECF No. 14.

On June 21, 2022, the defendant filed the instant motion, in which the defendant argues that the firearms restriction is not reasonable or justified.   ECF No. 20.   The defendant argues that he is not a danger to any person or the community at large.   *Id*. at 4.   But, contrary to defendant's argument and for the reasons set forth below, the firearms restriction currently imposed is the least restrictive condition that will assure the safety of the community, and the

Court should deny Montalvo's motion.

## **ARGUMENT**

### I.    **Applicable Authority.**

Under the Bail Reform Act, 18 U.S.C. § 3142(b), if a judicial officer determines that release under two standard conditions (not committing federal, state, or local crimes while on pretrial release and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions.   18 U.S.C. §§ 3142(b), (c)(1)(B).   In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).   These conditions may include prohibiting the defendant "from possessing a firearm, destructive device, or other dangerous weapon." 18 U.S.C. § 3142(c)(1)(B)(viii).

To determine the appropriate conditions of release, the judicial officer considers (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence;" (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."   18 U.S.C. § 3142(g).

### II.    **The Court Should Not Modify Montalvo's Release Conditions.**

The factors set forth in 18 U.S.C. § 3142(g) establish that the prohibition barring Montalvo from possessing a firearm during pretrial release is not unduly restrictive.   Regarding the nature and circumstances of the offense charged, the events of January 6, 2021 are

5

unprecedented.   The attack "was an assault on the Capitol, and it was an assault on democracy." *United States v. Paul Hodgkins*, 21-cr-0188. (RDM), Tr. at 71.   It resulted in significant injuries to law enforcement officers who were protecting the Capitol and members of Congress from the mob.

Montalvo's individual actions on January 6, also warrant the ban on firearm possession while on pretrial release.   Despite the tear gas and chaos around him, Montalvo willfully joined a mob and pushed his way into the Capitol building just minutes after the initial breach of the Rotunda Door.   Instead of leaving the Capitol when he encountered a line of law enforcement officers near the entrance to the House Chamber, Montalvo remained inside and continued into the building after the crowd broke through the police line.

Likewise, the weight of the evidence is overwhelming.   When interviewed before his arrest, Montalvo admitted that he entered the U.S. Capitol building.   The government also has extensive video evidence showing Montalvo inside the U.S. Capitol building on January 6, 2021.

Regarding the remaining two factors, Montalvo's history and characteristics and the nature and seriousness of the danger to any person or the community, the government is still investigating whether Montalvo has any ties to groups that advocate for political violence. Specifically, records obtained from Montalvo's cell phone carrier suggest that prior to January 6, 2021, Montalvo communicated with a phone number associated with Arthur Jackman of Florida. In July 2021, Jackman was indicted for his actions inside the U.S. Capitol on January 6, and press reports identify Jackman as having served as vice president of the Orlando chapter of the Proud Boys.[1]

---

1 *See* Spencer Hsu, "Current, Former Police Officers Charged in New Proud Boys Indictment in Capitol Riot," WASH. POST, Jul 16, 2021.

Although Montalvo has no criminal record, the firearms restriction is reasonable under the circumstances to protect pretrial services officers who may need to conduct supervision at Defendant's home.  *See, e.g., United States v. Green*, No. 3:18-CR-356, 2019 WL 6529446, at *3 (N.D. Tex. Dec. 4, 2019) (in a tax fraud case, denying motion to modify conditions of release because "[e]ven if Defendant is not charged with a crime of violence and has no history of violence . . . Defendant's possession of firearms endangers officers of the Pretrial Services who may make unannounced visits to ensure that Defendant is complying with the conditions of his release").  Even if Montalvo's wife were to secure her firearms in a safe, there is risk that Montalvo could access those firearms if and when his spouse removed them for use.

Montalvo cites *United States v. Logsdon*, Case No. 22-cr-23-02 (TFH) in support of his motion.  In *Logsdon*, Judge Hogan removed a firearms restriction placed on a January 6 defendant.   But that case is distinguishable because, unlike Montalvo, the defendant in that case was not required to meet with pretrial services in person.   As this Court reasoned in *United States v. Kastner*, Case No. 21-cr-725 (RDM), there is a "'critical' need to 'safeguard[] the Pretrial Services officers who visit the home [of criminal defendants] in the course of supervision.'" *citing United States v. Snead,* No. CR 12-132M, 2014 WL 4473773, at *8 (D.R.I. Feb. 4, 2014); *see also United States v. Smedley,* 611 F. Supp. 2d 971, 974 (E.D. Mo. 2009) (rejecting challenge to a pretrial release condition prohibiting the defendant from possessing a handgun in his home).

Defendant also argues that firearms prohibition is unconstitutional under the Second Amendment, but by agreeing to the firearm restraint, Montalvo has waived any Second Amendment right to posses a gun in his home while on pretrial release.  *See Green*, 2019 WL 6529446, at *3 n.3.

Defendant's pretrial release conditions are temporary measures pending trial.   During this limited time, if Montalvo is to remain on release, a firearms restriction is the least restrictive necessary condition required to ensure the safety of the community.

## **CONCLUSION**

Restricting access to defendant's firearms is the least restrictive condition the Court can impose to assure the safety of the community. The Court should deny Montalvo's motion.


Respectfully submitted,


MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:      /s/ *Jason M Crawford*
Jason M. Crawford
Trial Attorney
Detailed to the D.C. U.S. Attorney's Office
DC Bar No. 1015493
175 N St. NE
Washington, D.C. 20002
(202) 598-1099
Jason.M.Crawford@usdoj.gov

8