UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                                                               CASE NO.: 22-CR-146 (RDM)

    Plaintiff,

vs.

MATTHEW MONTALVO,

    Defendant.

_____/

## **DEFENDANT'S SENTENCING MEMORANDUM**

MATTHEW MONTALVO hereby submits the following memorandum to aid the Court in sentencing.

In this class B misdemeanor case, Mr. Montalvo asks this Court to consider the various 18 U.S.C. § 3553(a) factors and to fashion "a sentence sufficient, but not greater than necessary" to meet Congressional sentencing objectives. In this regard, he submits that supervised release, along with restitution and the other conditions recommended in the presentence report ("PSR"), are sufficient punishment. He has no criminal history, did not destroy or take any property, neither attacked nor threatened any Capitol Police, and did not go into any of the chambers. *And, unlike scores of January 6 defendants who celebrated like they just scored a touchdown, Mr. Montalvo never gloated on social media about entering the Capitol or January 6.*

Ultimately, Mr. Montalvo wants this Court to know that he recognizes he made a mistake and is very remorseful for the shame this has brought on him and his family. He is a hard-working professional, a family man, a good father, and a good husband. Mr. Montalvo cannot change what has happened. What he can do is take responsibility for his actions and move forward.

I.   Sentencing Factors Under 18 U.S.C. § 3553(a)

The Supreme Court's opinions in Kimbrough v. United States, 552 U.S. 84 (2007), and Gall v. United States, 552 U.S. 38 (2007) transformed sentencing. Congress mandates federal courts to impose the least amount of imprisonment necessary to achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). Here, because the sentencing guidelines are not applicable to class B misdemeanors, courts look to the factors in 18 U.S.C. § 3553(a) to formulate the sentence.

Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence,§ 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, a balancing of the § 3553(a) factors justifies a non-incarceration sentence of supervised release.

A. The Nature and Circumstances of the Offense

Like others, Mr. Montalvo came to Washington, D.C. on January 6th, 2021, at the request of then president Donald Trump to attend the rally at the Ellipse. After attending the

rally, he then followed the encouragement of multiple speakers[1], including President Trump, to head to the Capitol. The Statement of Offense details his actions:

> 10. Defendant walked to the east side of the Capitol building where the Rotunda Door was breached by rioters at 2:25 PM. At 2:27 PM, a U.S. Capitol Police Officer was blocking the door in an effort to stop entry when he was pulled to the ground by a rioter. Less than twenty seconds after the officer was pulled to the floor, defendant was among the wave of rioters to push their way through the door and into the building.
> 11. After entering through the Rotunda Door, defendant walked through Statuary Hall and joined a crowd that had gathered in front of a police line that had formed near the entrance to the Chamber of the House of Representatives. While standing in the crowd, defendant used a water bottle to flush tear gas out of his eyes.
> 12. After pushing through the police line, the crowd discovered that the entrance to the House Chamber had been barricaded shut from the inside. The defendant then followed the crowd towards the entrance of the Speaker's Lobby, which leads to the House Chamber.
> 13. Defendant was among the crowd gathered nearby in the hallway when Ashli Babbitt was shot as she attempted to enter the Speaker's Lobby. Soon after, a group of Metropolitan Police Department Officers arrived and forced the crowd, including defendant, out of the Capitol Building through the Upper House Door at 2:54 PM. Defendant was inside the Capitol building for approximately 27 minutes.

(DE 31). Mr. Montalvo later pled guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G).

In determining a fair and just sentence for January 6 defendants, courts have generally relied on the following factors: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the

---

[1] See Matthew Choi, Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

Case 1:22-cr-00146-RDM   Document 38   Filed 12/23/22   Page 4 of 7

USA v. MONTALVO, CASE NO. 22-CR-146-RDM

4

defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition.

As to entering the Capitol, Mr. Montalvo neither attacked anyone nor destroyed any property to gain entry. He went in with a crowd of people. He takes issue with the Government's characterization that he "pushed his way past police officers to gain access to the Capitol building through the Rotunda Doors shortly after that entrance was breached."

First, the PSR does not even make this assertion. Second, the Government's statement is different than the signed Statement of Offense that reads: "defendant was among the wave of rioters to push their way through the door and into the building." (DE 31). To read the Government's description, it appears Montalvo himself pushed police officers. Of course, this is not alleged, charged, or seen in the video. Rather, Mr. Montalvo was in a large crowd, and the crowd's surge forced him to move forward to not get stampeded on. It is an overreach to claim that he personally pushed his way past police officers.

As to the other factors, he did not cause or encourage violence; he neither destroyed nor stole any property, and he did not encourage or aid others to; he did not destroy evidence; he was in the Capitol for 27 minutes; he followed the police commands to exit; he did not take to social media to celebrate, gloat, or brag; and he did not go into any of the Chambers or restricted offices.

The Government cites to his lack of contrition and his proximity to the shooting of Ashli Babbitt as justifications for Mr. Montalvo's incarceration. As to remorse, it is unclear what platform the Government expected him to express sufficient contrition on, especially for someone charged with offenses whom is presumed innocent, at least initially. Also, that he was

simply nearby when Babbitt was shot does not somehow mean his individual culpability is increased.

### B. The History and Characteristics of the Defendant

As set forth in the PSR, Mr. Montalvo has no criminal history. He has been a law-abiding citizen all of his life. He regularly attends church, raised his kids, is happily married, and runs a successful real estate and mortgage brokerage practice. He has no tale of woe that is so often found in these sentencing memoranda. He was raised in the Boston area and had a happy childhood. He stopped attending grade school after 7th grade, but went into the Job Corps. Indeed, he had a very positive experience in the Westover Job Corps where he learned computing, accounting, and obtained his diploma. He is a successful real estate agent in Central Florida.

### C. The Need for the Sentence to Afford Adequate Deterrence and Respect for the Law

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). As to specific deterrence, Mr. Montalvo has no criminal history. His arrest, this court process, and this conviction have served as a grim wakeup call that he had gone too far.

General deterrence has to still account for the individual's particular actions on January 6. In this regard, Mr. Montalvo is at the low end of the spectrum. Mr. Montalvo is by no means asserting that probation should be automatic for those charged with parade and picketing. But that in other cases where courts imposed incarceration, there was usually some additional egregious conduct that occurred while inside the Capitol, (e.g., going into a Chamber, destroying property, smoking marijuana) coupled with gloating on social media. In other words,

there has to be meaningful distinctions between January 6 offenders, even the misdemeanor offenders.

### D.  The Need to Avoid Unwarranted Sentencing Disparities

The high majority of January 6 defendants who pled to the lone parade and-picketing-5104 charge received non-incarceration sentences, as should Mr. Montalvo. (See the Government's Exhibit of the Sentencing Tables, at DE 35-1). He did not do anything egregious, like others charged with misdemeanors, while inside the Capitol to justify incarceration.

This is evident in the Micajah Jackson case that was previously before this Court for sentencing. (See 21-CR-484). Jackson also pled to the 5104 charge, and the Government sought 60 days of incarceration. However, this Court sentenced Jackson to no incarceration and 3 years of probation, with 90 days at a halfway house. *Ibid.* In that case, Jackson even took to social media throughout the riot at the Capitol, including posting himself walking with known proud boys over to the Capitol from the rally. Of course, Mr. Montalvo did not post anything on social media that day.  Both Jackson and Mr. Montalvo went inside the Capitol, but they did not harm anyone or destroy anything.

### II.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained above, those factors support a sentence of no incarceration and supervised release. Such a sentence still protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Mr. Montalvo's liberty as a consequence of his behavior, and in proportion to his individual actions on January 6, 2021. Alternatively, this Court has the option of home detention, which is of course a higher form of punishment than straight supervision.

Mr. Montalvo in no way seeks to minimize the present offense or to somehow understate or trivialize the crime as charged. But Mr. Montalvo *has* accepted the legal consequences of his actions — never mind the emotional and the familial wreckage he has caused to those closest to him. He will have to live with that.

Respectfully submitted,

/s/Aubrey Webb
Law Offices of Aubrey Webb
55 Merrick Way, Suite 212
Coral Gables, Florida 33134
305-461-1116
Email: aubrey@aqwattorney.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was efiled to the Office of the Clerk, United States District Court, District of Columbia, 333 Constitution Ave., N.W. Washington D.C. 20001, Room 1225 and to the Office of the United States Attorney, 555 4th St N.W., Washington D.C. 20530, on December 23, 2022.

/s/Aubrey Webb